# COMMERCIAL REAL ESTATE SALE CONTRACT

**THIS DOCUMENT IS MORE THAN A RECEIPT FOR MONEY. IT IS INTENDED TO BE A LEGALLY BINDING AGREEMENT. READ IT CAREFULLY.**

THIS REVISED AGREEMENT is made and entered into as of the 7th Day of January 2023 by and between Tavern on LaGrange Corp. an Illinois Corporation ("Seller") and Unique Property Holdings, LLC an Illinois limited liability company and or Assignee ("Buyer") for the purchase of that certain land and improvements thereon (collectively referred to as the "Property") located in Multiple Addresses (See Exhibit A), County of Cook, State of Illinois, and more particularly described as follows:

5403 S. LaGrange Rd. Countryside, IL 60525

PIN NUMBER(S) See Exhibit A

## TERMS AND CONDITIONS

Seller agrees to sell the Property, and Buyer agrees to purchase the Property, on the following terms and conditions.

1) **PURCHASE PRICE:** The purchase price for the Property's will be is  TWO MILLION SEVEN HUNDRED THOUSAND  dollars ($2,700,000.00) which shall be paid by certified or cashier's check or wire transfer at closing pursuant to the terms stated herein.

2) **DEPOSIT:** Upon execution of this Agreement, Buyer shall deposit the initial sum of  Two Hundred Thousand 00/100  dollars ($ 200,000.00) in the form of  Check  with: TITLE COMPANY in a STRICT JOINT ORDER ESCROW.

___ Chicago Title Insurance Services of Chicago ("Agent")

___ All notices, demands and instructions with respect to the Deposit must be in writing. In the event that conflicting demands are made or served upon the Agent, the Agent shall have the absolute right to withhold its performance with respect to the Deposit until it has received written notification satisfactory to the Agent of agreement between the parties or by final judgment of the court as to the disposition of the Deposit. All parties to this Agreement hereby jointly and severally promise and agree to fully compensate, indemnify and hold Agent harmless from all liabilities, attorney fees, and other arbitration and litigation costs arising from or related to Agent's performance with respect to the Deposit. In the event of conflicting demands upon Agent, the Agent may, at its option, deposit any and all funds in question with the AAA Administrator which would have jurisdiction over the matter minus any expenses Agent has incurred and the Agent will be relieved of any further responsibility and liability in connection with the Deposit.

___ Other/Title Company  TBD Title Company  ("Holder").

This initial sum deposit ("Deposit") to be credited against the purchase price of the Property at closing or otherwise used as set forth in this Agreement and shall be held in trust in a separate account by Agent. Earnest money shall be delivered at the end of the Attorney review period which shall expire on October 31, 2022.

3) **CLOSING:** Closing shall take place on or before March 15, 2023 at the office of  Chicago Title Insurance Company  ("Closing Agent") located at  TBD  or such other location as the parties shall mutually agree. Seller and Buyer agree to prepare and execute such instructions as may be necessary and appropriate to close the transaction. Should the instructions fail to be executed as required, Closing Agent shall and hereby is directed to close escrow pursuant to the terms and conditions of this Agreement. "Closing Date" shall mean the date on which the deed transferring title is recorded, which shall occur on or before December 31, 2022. Closing fees shall be paid by (AS CUSTOMARY). All other closing costs shall be paid in accordance with the custom in the county in which the Property is located. At closing, both Buyer and Seller shall deliver or cause to be delivered to the other the following: 1) Real Estate Transfer Declaration; and 2) such other documents, instruments and amounts as may be reasonably required to carry out the terms and intent of this Agreement.

4) **PRORATIONS:** Rents, Security Deposits, Third Party Deposits any and all premiums on insurance acceptable to Buyer, interest on any debt being assumed or taken subject to by Buyer, and any other expenses of the Property shall be prorated as of the Closing Date. Security deposits, advance rentals, and the amount of any future lease credits shall be credited to Buyer. Real estate taxes for the year 2021/2022 shall be prorated on the basis of 110_% of the most recent ascertainable taxes [ X ] such prorations to be final /[ ] such taxes to be reprorated upon receipt of the actual bill. The amount of any bond or assessment which is a lien and not customarily paid with real property taxes shall be [ X ] paid /[ ] assumed by  Seller  .

**LEASED PROPERTY PRORATIONS:** Rents actually collected (prior to closing) will be prorated as of the Closing Date and rent collected thereafter applied first to rental payments then owed the Buyer and their remainder paid to the Seller. All free rent due any tenant at the close of escrow for rental periods after the closing shall be a credit against the Purchase Price. Other income and expenses shall be prorated as follows:_____.

5) **TITLE:** Within TWENTY ONE ( 21_) days after the Effective Date of this Agreement, Seller shall procure and cause to be delivered to Buyer a preliminary title commitment for an owner's title insurance policy issued by a title insurance company licensed to do business in the State of Illinois (Title Company) in the amount of the purchase price covering title to the Property. Within  Five ( 5 ) days following the receipt thereof, Buyer shall either approve in writing the exceptions contained in said title report or specify in writing any exceptions to which Buyer reasonably objects. If Buyer objects to any exceptions, Seller shall, within  Five ( 5 ) days after receipt of Buyer's objections, deliver to buyer written notice that either (i) Seller will, at Seller's expense, attempt to remove the exception(s) to which Buyer has objected before the Closing Date or (ii) Seller is unwilling or unable to remove any such exception by the Closing Date, in which event Buyer may elect to terminate this Agreement and receive back the entire Deposit, and Buyer and Seller shall have no further obligations under this Agreement; or alternatively, Buyer may elect to purchase the Property subject to such exception(s).

Seller shall convey by [ xxxx ] Warranty Deed/[ ] Land Trust Deed to Buyer (or to such person or entity as Buyer may specify) marketable fee title subject only to the exceptions approved by Buyer in accordance with this Agreement and shall execute and deposit said [ ] Warranty Deed/[ ] Land Trust Deed to the location designated in paragraphs 3 within  Five  ( 5 ) days of the date contingencies (set forth in paragraphs  9  of the Standard Addendum) are removed. Title shall be insured by a standard owner's policy of title insurance issued by Title Company in the amount of the purchase price with premium paid by  Seller.

6) **FINANCING CONTINGENCIES:**

1.1   Appraisal

7) **PERSONAL PROPERTY:** Title to any personal property to be conveyed to Buyer in connection with the sale of the Property shall be conveyed to Buyer by Bill of Sale at the Closing Date free and clear of all encumbrances (except those approved by Buyer as provided above). The price of these items shall be included in the purchase price for the Property, and Buyer agrees to accept all such personal property in "as is" condition.

8) **CONDITION OF PROPERTY:** It is understood and agreed that the Property is being sold "as is"; that Buyer has, or will have prior to the Closing Date, inspected the Property; and that neither Seller nor Agent makes any representation or warranty as to the physical condition or value of the Property or its suitability for Buyer's intended use.

BUYER'S INITIALS _EM_

9) **INSPECTION CONTINGENCIES**

1.2  _____ Seller agrees to provide Buyer with items  _a, b, c, d, e_ _____ listed below within _____ _Thirty_ _(30_) calendar days following the Effective Date:

   a.   All service contracts, insurance policies, latest tax bill(s) and other written agreements or notices which affect the Property.

   b.   The following items, if readily available to Seller:  _Existing Phase I and Phase II Environmental Reports and Existing Survey_

   c.   CURRENT TAX BILLS

   d.   ALTA SURVEY

   e.   ANY AND ALL BLUE PRINTS FROM ORGINAL BUILD

Buyer shall acknowledge receipt of these items in writing. Buyer shall have twenty-one (21) calendar days following receipt thereof to review and approve in writing each of these items. If Buyer fails to approve these items within the specified time, this Agreement shall be rendered null and void. Buyer's entire Deposit shall be returned, and Buyer and Seller shall have no further obligations hereunder.

1.3   Buyer shall have  _twenty-one_ ( _21_ ) calendar days following the Effective Date of this agreement to inspect the physical condition of the Property, including, but not limited to soil conditions and the presence or absence of lead-based paint and other hazardous materials on or about the Property, and to notify the Seller in writing that Buyer approves same. If Buyer fails to approve the physical condition of the Property within the specified time, this Agreement shall be null and void, Buyer's entire Deposit shall be returned, and Buyer and Seller shall have no further obligations hereunder.

1.4   Lead-Based Paint Hazards: Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 must be notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. **(SELLER TO INITIAL ONE BELOW)**

   (_____) 1. Seller warrants that the Property was constructed after 1978.
   (_____) 2. Seller is not sure when the Property was constructed and/or has reason to believe that lead-based paint hazards may be present. **(Attach "LEAD-BASED PAINT DISCLOSURE ADDENDUM TO PURCHASE AGREEMENT".)**

1.5   This Agreement is not subject to any inspection contingencies. Buyer warrants that Buyer is knowledgeable in real estate matters and has made an investigation and inspections which Buyer deems necessary and appropriate with regard to its purchase of the Property. Buyer acknowledges and agrees that Buyer is not relying upon any representations or warranties made by Seller or Agent in electing to waive inspection contingencies.

10) **DEPOSIT TRANSFER:**

1. N/A   Buyer's Deposit shall remain in trust, if held by Agent, or with  _N/A_  if previously deposited with  _N/A_ , until removal of the inspection contingencies set forth in paragraph(s)  _N/A_  hereof. Upon removal of said contingencies, Buyer's Deposit shall be delivered to  _N/A_  by Agent (if same has been held in trust by Agent); a [  ] Warranty Deed [  ] Land Trust Deed duly executed by Seller, sufficient to convey title to Buyer, shall be delivered to  _N/A_ _____ by Seller, and Buyer and Seller shall execute escrow instructions directing the Closing Agent to release immediately and deliver to Seller Buyer's entire Deposit (including increases, if any). Seller shall hold Buyer's Deposit subject to the remaining terms and conditions of this Agreement. If the Property is made unmarketable by Seller, or acts of God, the Deposit shall be returned to Buyer and the deed shall be returned to Seller.

11) **SURVEY:** Five (5) days prior to the Closing Date, Seller shall furnish at Seller's expense, a current survey, acceptable to Buyer's lender, by a licensed land surveyor, showing the present location of all improvements and encroachments, if any.

12) **RISK OF LOSS:** Risk of loss to the Property shall be borne by Seller until title has been conveyed to Buyer. In the event that the improvements on the Property are destroyed or materially damaged between the Effective Date of this Agreement and the date title is conveyed to Buyer, Buyer shall have the option of demanding and receiving back the entire Deposit and being released from all obligations hereunder, or alternatively, taking such improvements as Seller can deliver. Upon Buyer's physical inspection and approval of the Property, Seller shall maintain the Property through closing, in the same condition and repair as approved, reasonable wear and tear excepted.

13) **ESTOPPEL CERTIFICATES:**

1. N/A   Seller shall obtain and deliver, within  _N/A_  ( _N/A_ ) calendar days after the last contingency set forth in paragraphs(s)  _N/A_  is removed, estoppel letters or certificates from each lessee or tenant at the Property stating: (a) the date of commencement and the scheduled date of termination of the lease, (b) the amount of advance rentals or rent deposits paid to Seller, (c) the amount of monthly (or other periodic) rent paid to Seller, (d) that the lease is in full force and effect and that there have been no modifications or amendments thereto, or, if there have been any modifications or amendments, and explanation of the same, (e) square footage

(if set forth in the lease), and (f) that there is no default under the terms of the lease by lessor or lessee. Buyer shall have __N/A__ ( __N/A__ ) calendar days after receipt to disapprove, in writing, the estoppel certificates. Buyer may only disapprove said certificates, and cancel the Agreement, if the certificates reflect that net income from the Property is materially less than that previously represented by Seller. Upon such disapproval, Buyer's entire deposit shall be returned, and the parties shall have no further obligations hereunder.

14) **POSSESSION:** Multiple tenants are currently in possession for property.

15) **LIQUIDATED DAMAGES/NON-REFUNDABLE DEPOSIT:** Upon the removal of Buyer's contingencies, the Deposit shall become non-refundable in the event of a default by Buyer. Buyer and Seller agree that it would be impracticable or extremely difficult to fix actual damages in the event of a default by Buyer, that the amount of Buyer's Deposit hereunder (as same may be increased by the terms hereof) is the parties' reasonable estimate of Seller's damages in the event of Buyer's default, and that upon Buyer's default in its purchase obligations under this Agreement not caused by any breach by Seller, Seller shall be released from its obligation to sell the Property and shall retain Buyer's Deposit (as same may be increased by the terms hereof) as liquidated damages, which shall be Seller's sole and exclusive remedy in law or at equity for Buyer's default.

**Buyer's Initials** _____  **Seller's Initials** _____

16) **SELLER EXCHANGE:**

1. _____ Seller shall have the right (provided Seller has notified Buyer in writing at least ten (10) days prior to the Closing Date) to designate a parcel or parcels of other real estate property (the "Exchange Property") which Seller would like to acquire in exchange for the Property. Buyer shall cooperate with Seller in effecting such an exchange provided that: (a) the acquisition and exchange of the designated Exchange Property shall not impose upon buyer an additional financial obligations; (b) Buyer shall have not obligation to close on the Exchange Property beyond a date 180 days from the Closing Date; and (c) Seller shall indemnify and hold buyer harmless from any and all liabilities, claims, losses or actions which Buyer incurs or to which buyer may be exposed as a result of Buyer's participation in the contemplated exchange. However, this agreement is not subject to or contingent upon Seller's ability to locate exchange Property of effectuate an exchange. In the event any exchange contemplated by Seller should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

17) **BUYER EXCHANGE:**

1. _____ Buyer shall have the right (provided Buyer has notified Seller in writing at least ten (10) days prior to the Closing Date) to designate a parcel or parcels of other real property (the "Exchange Property") which buyer wishes to exchange for the Property. Seller shall cooperate with Buyer in effecting such an exchange provided that: (a) Seller shall not incur any additional liability or financial obligations as a consequence of Buyer's exchange; (b) Buyer's exchange shall in no way reduce the net amount to which Seller is entitled under the terms of this Agreement; (c) Seller shall have no obligation to close on the Exchange Property beyond a date 180 days from the Closing date; and (d) Buyer shall indemnify and hold Seller harmless from any and all liabilities, claims, losses or actions which Seller incurs or to which Seller may be exposed as a result of Seller's participation in the contemplated exchange. This agreement is not subject to or contingent upon buyer's ability to effectuate an exchange. In the event any exchange contemplated by Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided therein.

18) **AUTHORIZATION:** Buyer and Seller authorize Agent to disseminate sales information regarding this transaction, including the purchase price of the Property.

19) **AGENCY DISCLOSURE:**

20) **OTHER BROKERS:** None

21) **DISCLOSURE OF REAL ESTATE LICENSE:**

1. _____ The _____ in this transaction is a licensed real estate agent acting as a principal, and is associated with _____, a licensed real estate broker.

1. _____ The _____ in this transaction is a licensed real estate agent acting as a principal, and is associated with _____, a licensed real estate broker.

22) **COMPLIANCE WITH LAWS:** The provisions of the Uniform Vendor and Purchaser Risk act of the State of Illinois shall be applicable to this Agreement. Buyer and Seller agree to make all disclosures and comply with applicable provisions of local or state law, including the Real Estate Settlement Procedures Act of 1974, as amended, and any local ordinances with respect to transfer taxes.

23) **LIMITATION OF LIABILITY:** Except for Agent's gross negligence or willful misconduct, Agent's liability for any breach or negligence in its performance of this Agreement shall be limited to the greater of $50,000 or the amount of compensation actually received by Agent in any transaction hereunder.

24) **SCOPE OF AGENT'S AUTHORITY AND RESPONSIBILITY:** Agent shall have no authority to bind either Buyer or Seller to any modification or amendment of this Agreement. Agent shall not be responsible for performing any due diligence or other investigation of the Property on behalf of either Buyer or Seller, or for providing either party with professional advice with respect to any legal, tax, engineering, construction or hazardous materials issues. Except for maintaining the confidentiality of any information regarding Buyer or Seller's financial condition and any future negotiations regarding the terms of this Purchase Agreement or as otherwise required by law, Buyer and Seller agree that their relationship with Agent is at arm's length and is neither confidential nor fiduciary in nature.

25) **BROKER DISCLAIMER:** Buyer and Seller acknowledge that, except as otherwise stated herein, Agent has not made any investigation, determination, warranty or representation with respect to any of the following: a) the legality of the present or any possible future use of the Property under any federal, state or local law; b) pending or possible future action by any governmental entity or agency which may affect the Property; c) the physical condition of the Property, including but not limited to soil conditions, the structural integrity of the improvements, and the presence or absence of fungi or wood destroying organisms; d) the accuracy or completeness of income and expense information and projections, of square footage figures, and of the texts of leases, options and other agreements affecting the Property; e) the possibility that leases, options, or other documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; or f) the presence or location of any hazardous materials on or about the Property, including but not limited to, asbestos, PCB's, other toxic, hazardous or contaminated substances, and underground storage tanks; and g) the accuracy of any information contained in a tenant's or lessee's estoppel certificate. Buyer agrees that investigation and analysis of the foregoing matters is Buyer's sole responsibility and that Buyer shall not hold Agent responsible therefor.

**BUYER'S INITIALS** _____  **SELLER'S INITIALS** _____

26) **ARBITRATION OF DISPUTES:** If a controversy arises with respect to the subject matter of this Purchase Agreement or the transaction contemplated herein (including but not limited to the parties' rights to the Deposit or the payment of commissions as provided herein), Buyer, Seller and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Notice: By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration as provided by Illinois law and you are giving up any rights you might possess to have the dispute litigated in court or jury trial. By initialing in the space below you are giving up your judicial rights to discovery and appeal, unless such rights are specifically included in the "Arbitration of Disputes" provision. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate. Your agreement to this arbitration provision is voluntary.

We have read and understand the foregoing and agree to submit disputes arising out of the matters included in the "Arbitration of Disputes" provision to neutral arbitration.

Buyer's Initials_____ Seller's Initials_____
Buyer's Agent's Initials_____ Seller's Agent's Initials_____

27) **SUCCESSORS & ASSIGNS:** This agreement and any addenda hereto shall be binding upon and inure to the benefit of the heirs, successors, agents, representatives and assigns of the parties hereto.

28) **ATTORNEYS' FEES:** In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Agent, the prevailing party shall be entitled to recover its costs, including costs of arbitration, and reasonable attorneys' fees in addition to any other relief to which such party may be entitled.

29) **TIME:** Time is of the essence of this Agreement.

30) **NOTICES:** All notices required or permitted hereunder shall be given to the parties in writing (with a copy to Agent) at their respective addresses as set forth below. Should the date upon which any act required to be performed by this Agreement fall on a Saturday, Sunday or holiday, the time for performance shall be extended to the next business day.

31) **FOREIGN INVESTOR DISCLOSURE:** Seller and Buyer agree to execute and deliver any instrument, affidavit or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax Act and regulations promulgated thereunder. Seller represents that Seller   is  X  is not a foreign person as defined in Section 1445 of the Internal Revenue Code and withholding of any portion of the purchase price   is  X  is not required.

32) **ADDENDA:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Agreement, including addenda, if any, expresses the entire agreement of the parties and supersedes any and all previous agreements between the parties with regard to the Property. There are no other understandings, oral written, which in any way alter or enlarge its terms, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. Any future modification of this Agreement will be effective only if it is in writing and signed by the party to be charged.

33) **ACCEPTANCE AND EFFECTIVE DATE:** Buyer's signature hereon constitutes an offer to Seller to purchase the Property on the terms and conditions set forth herein. Unless acceptance hereof is made by Seller's execution of this Agreement and delivery of a fully executed copy to Buyer, either in person or by mail at the address shown below, on or before October 31, 2022 UNLESS AGREED this offer shall be null and void, the Deposit shall be   returned to Buyer, and neither Seller nor Buyer shall have any further rights or obligations hereunder. Delivery shall be effective upon personal delivery to Buyer or Buyer's agent or, if by mail, on the next business day following the date of postmark.  The "Effective Date" of this Agreement shall be the later of (a) the date on which Seller executes this Agreement, or (b) the date of written acceptance (by either Buyer or Seller) of the final counter-offer submitted by the other party.

34) **GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

35) **NON-DISCRIMINATION:** Buyer and Seller acknowledge that it is illegal for either Seller, Buyer or Agent to refuse to lease or sell to any person on the basis of race, color, religion, national origin, sex, marital status or physical disability.

36) **OTHER TERMS AND CONDITIONS:** Seller and Buyer also understand and consent that if a loan is arranged through Coldwell Banker Capital Corporation, Agent may receive a referral fee separate and apart from any commission referenced in this Agreement.

**THIS CONTRACT IS SUBJECT TO BUYER AND SELLER ATTORNEY REVIEW & APPROVAL WITHIN SEVEN (7) DAYS OF THE ACCEPTANCE OF THIS AGREEMENT.**

NO REPRESENTATION IS MADE BY AGENT AS TO THE LEGAL OR TAX EFFECT OR VALIDITY OF ANY PROVISION OF THIS PURCHASE AGREEMENT. A REAL ESTATE BROKER IS QUALIFIED TO GIVE ADVICE ON REAL ESTATE MATTERS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT YOUR ATTORNEY OR TAX ADVISOR.

**THE PARTIES ARE ADVISED TO CONSULT THEIR RESPECTIVE ATTORNEYS WITH REGARD TO THE LEGAL EFFECT AND VALIDITY OF THIS PURCHASE AGREEMENT.** The undersigned Buyer hereby offers and agrees to purchase the above described Property for the price and upon the terms and conditions herein stated. This offer is made by Buyer to Seller on this 7th day of January 2023.

Buyer hereby acknowledges receipt of an executed copy of this Agreement.

BUYER: _[signature]_                                              ADDRESS: 101 Burr Ridge Parkway Suite 206
Unique Property Holdings, LLC                                              Burr Ridge, IL 60527
an Illinois limited liability company
By: Eric Malone
Its: Manager

BUYER: _____

SELLER: _[signature]_                                             ADDRESS: 5403 S. LaGrange Rd.
Tavern on LaGrange Corp. an Illinois Corporation                           Countryside, IL 60525

SELLER: _____

DATE OF OFFER: January 7, 2023

EFFECTIVE DATE: January 14, 2023

ATTORNEY FOR BUYER:

Tony Tortorich
Law Office of AR Tortorich
708-565-4583
f. 630-214-2336
a.r.tortorich@gmail.com
15640 Janas Drive
Homer Glen, IL 60491

ATTORNEY FOR SELLER:

GARY GRASSO
Grasso Law, PC
Hinsdale, Illinois 60521
630.654.4500 (o)
312.498.3202 (c)