UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| TAVERN ON LAGRANGE CORP. | ) | Case No. 23-01687 |
| | ) | |
| Debtor. | ) | Judge A. Benjamin Goldgar |
| | ) | |

**<u>NOTICE OF MOTION</u>**

PLEASE TAKE NOTICE that on **April 10, 2023, at 9:30 a.m.,** I will appear before the Honorable A. Benjamin Goldgar, or any judge sitting in that judge's place, **either** in courtroom 642 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604, or electronically as described below, and present the **UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT CASE AND TO SHORTEN NOTICE,** a copy of which is attached.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.**

You may appear electronically by video or by telephone.

**To appear by video**, use this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is 161 500 0972 and the passcode is 726993. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

*/s/ Jeffrey L. Gansberg*
Jeffrey L. Gansberg, Attorney
OFFICE OF THE U.S. TRUSTEE
219 South Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 886-3327

## CERTIFICATE OF SERVICE

I, Jeffery L. Gansberg, Trial Attorney, certify that on April 6, 2023,  I caused to be served copies of this notice, the attached motion and proposed orders on the ECF Registrants shown below *via* the Court's Electronic Notice for Registrants and for all other entities listed on the service list, *via* First Class US Mail by BMC Group. A supplement to this Certificate of Service from BMC Group will be filed.

/s/ *Jeffrey L. Gansberg*

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants:**

- **J Kevin Benjamin**    attorneys@benjaminlaw.com, firmecf@gmail.com;BenjaminLegalServices@jubileebk.net
- **Theresa S. Benjamin**    theresa@benjaminlaw.com, firmecf@gmail.com;jkb@benjaminlaw.com;g5094@notify.cincompass.com;r54940@notify.bestcase.com;benjaminlegalservices@jubileebk.net
- **Erica N Byrd**    ebyrd@VABLawFirm.com
- **Russell R Custer**    rcuster@lilliglaw.com
- **William J Factor**    wfactor@wfactorlaw.com, wfactorlaw@gmail.com;bsass@wfactorlaw.com;wfactor@ecf.courtdrive.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com
- **Jeffrey K. Paulsen**    jpaulsen@wfactorlaw.com, bsass@wfactorlaw.com;jpaulsen@ecf.courtdrive.com
- **Charles S. Stahl**    cstahl@smbtrials.com
- **Susan Valentine**    svalentine@vablawfirm.com, mnoriega@vablawfirm.com
- **Neema T Varghese**    nvarghese@nvconsultingservices.com

**Parties Served via First Class Mail:**

Ally Bank, c/o AIS Portfolio Services, LLC |4515 N Santa Fe Ave. Dept. APS|Oklahoma City, OK 73118-7901

Kapitus Servicing, Inc. |2500 Wilson Boulevart, Suite 350|Arlington, VA 22201-3873

Tavern on LaGrange Corp |101 Burr Ridge Pkwy, Suite 206|Burr Ridge, IL 60527-0846

U.S. Bankruptcy Court|Eastern Division|219 S Dearborn|7th Floor|Chicago, IL 60604-1702

AMUR Financial |304 W 3rd St|Grand Island, NE 68801-5941

Ally Bank |AIS Portfolio Services, LLC|4515 N Santa Fe Ave. Dept. APS|Oklahoma City, OK 73118-7901

Ally Bank |c/o AIS Portfolio Services, LP|4515 N Santa Fe Ave Dept APS|Oklahoma City, OK 73118-790

Benjamin Legal Services |1016 W Jackson Blvd|Chicago, IL 60607-2914

Capital One Bank (USA), N.A. |American Infosource LP, as agent|4515 N Santa Fe Ave|Oklahoma City, OK 73118-7901

Centra Funding LLC |c/o Wright Law Group PLLC|PO Box 105603 Pmb 84356|Atlanta GA 30348-5603

Centra Leasing |Attn Rebecca Foster in Collections|1400 Preston Rd Ste 115|Plano, TX 75093-5159

Charles  S. Stahl, Jr., Esq. |2525 Cabot Dr|Lisle, IL 60532-3609

Commonwealth Edison Company |Bankruptcy Department|1919 Swift Dr|Oak Brook, IL 60523-1502

Ferrellgas LP |1 Liberty Plz Md 40|Liberty, MO 64068-2971

Fox Capital Group Inc |1920 E Hallandale Beach Blvd Ste 503|Hallandle Bch, FL 33009-4723

Guadalupe Arce |11027 W 153rd St|Orland Park, IL 60467

IOU Financial |600 Townpark Ln Nw Ste 100|Kennesaw, GA 30144-3736

Illinois Department of Revenue |Attn Christopher Moore Special Agent|9511 W. Harrison|Des Plaines, IL 60016-1563

ILLINOIS DEPARTMENT OF REVENUE|BANKRUPTCY UNIT|PO BOX 19035|SPRINGFIELD IL 62794-9035

Illinois Department of Revenue |Bureau of Criminal Investigations|9511 W Harrison|Des Plaines, IL 60016-1563

Illinois Liquor Control Commission |50 W Washington St Rm 209|Chicago, IL 60602-1464

Internal Revenue Service |Centralized Insolvency Operation|Po Box 7346|Philadelphia, PA 19101-7346

Internal Revenue Service |Mail Stop 5014 CHI|230 S Dearborn Street Room 2600|Chicago IL 60604-1705

Kaminski Law PLLC |Attn Shanna M. Kaminski|Po Box 725220|Berkley, MI 48072-5220

Kapitus Servicing, Inc. |as agent for Kapitus LLC|120 W 45th St Fl 4|New York, NY 10036-4041

NARAI Ventures LLC |C/O Yana Chechelnitsky, Esq.|6143 186th St Ste 450|Fresh Meadows, NY 11365-2710

Newpoint Advisors Corporation |Matthew Brash|5600 N River Rd Ste 800|Rosemont, IL 60018-5166

Office of the Attorney General |Attn Alesia Crocket Special Investigator|100 W Randolph St|Chicago, IL 60601-3271

Po Box 105603 Pmb 84356 |Atlanta, GA 30348-5603

Satum Encore Funding |525 Washington Blvd Jersey Blvd|Jersey City, NJ 07310-1606

Swanson Martin Bell LLP |2525 Cabot Dr|Lisle, IL 60532-3628

PAYPAL|3505 SILVERSIDE RD|STE 200|WILMINGTON DE 19810-4905

Swift Financial LLC |PO Box 208703|Dallas, TX 75320-8703

Tavern on LaGrange II LLC |Attn Antonio Barnes, Manager|15774 S La Grange Rd  Pmb 110|Orland Park, IL 60462-4766

The Law Office of William J. Factor, Ltd |105 W Madison St Ste 1500|Chicago, IL 60602-4602

Valentine Austriaco & Beuschel |105 W Adams St Fl 35|Chicago, IL 60603-6223

Valentine Austriaco & Bueschel, 300 E. Randolph Street, Suite 3400, Chicago, IL 60601

J Kevin Benjamin Esq.|Benjamin Legal Services PLC|1016 W. Jackson Boulevard|Chicago, IL 60607-2914

Neema T Varghese |NV Consulting Services|701 Potomac, Ste 100|Naperville, IL 60565-3422

Patrick S Layng |Office of the U.S. Trustee, Region 11|219 S Dearborn St|Room 873|Chicago, IL 60604-2027

Theresa S. Benjamin  Esq.|Benjamin * Brand, LLP|1016 W. Jackson Boulevard|Chicago, IL 60607-2914

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| TAVERN ON LAGRANGE CORP. | ) | Case No. 23-01687 |
| | ) | |
| Debtor. | ) | Judge A. Benjamin Goldgar |
| | ) | |

**UNITED STATES TRUSTEE'S MOTION TO DISMISS OR
CONVERT CASE AND TO SHORTEN NOTICE**

Patrick S. Layng, the United States Trustee for the Northern District of Illinois (the "**U.S. Trustee**"), by and through his attorney, Jeffrey L. Gansberg, moves pursuant to 11 U.S.C. § 1112(b) for an order converting or dismissing this case and shortening notice (the "**Motion**"). In support of the Motion, the U.S. Trustee states as follows:

**INTRODUCTION**

1.      This case, Tavern on LaGrange Corp's (the "**Debtor**") second bankruptcy case in less than a year, should be dismissed because: (i) the Debtor's situation has not changed or, if it has, it is materially worse than when its last case was dismissed; (ii) the Debtor has no prospect of reorganizing; (iii) the Debtor has no assets to liquidate; and (iv) the bankruptcy case prejudices the Debtor's creditors. Those creditors include the creditors in the original bankruptcy case plus the Subchapter V Trustee from the Debtor's original case ("**Brash**") and his attorney.

**JURISDICTION**

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

3.      This is a core proceeding concerning the administration of the estate pursuant to 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine pursuant to IOP 15(A) and LR 40.3.1 of the United States District Court for the Northern District of Illinois.

4.      Venue of this case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The U.S. Trustee has standing to file the Motion under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

## FACTUAL SUMMARY

 The Debtor, Its History, and Its Operations

6.      The Debtor formerly operated a restaurant located at 5403 S. Lagrange, Countryside, IL.

7.      On April 26, 2022, the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 (the "**First Bankruptcy**").

The Debtor's First Bankruptcy Case

8.      As indicated, on April 26, 2022 (the "**First Petition Date**"), the Debtor filed its voluntary petition for relief under Subchapter V of Chapter 11.  The petition was signed by G. Estevein Perkins ("**Perkins**"), who executed the documents as the "Manager and Designated Corporate Representative" of the Debtor.  *Id.*  On April 28, 2022, Brash was appointed.

9.      On May 5, 2022, the U.S. Trustee filed his motion to remove the Debtor as debtor-in-possession (the "**Removal Motion**").  The basis of the Removal Motion was the Debtor's failure to comply with the terms of the cash collateral order entered by the Court and for paying pre-petition obligations during the bankruptcy.

10.     On May 13, 2022, the Court entered an order removing the debtor in possession, which order was entered by agreement of the Debtor (the "**Removal Order**").  As a result of the Court entering the Removal Order, Brash was authorized to operate the Debtor's business.

11.     After an analysis of the Debtor's books and records, Brash determined that there was insufficient cash flow generated by the Debtor to operate, much less reorganize.  Accordingly,

on May 20, 2022, Brash informed the Debtor and its attorney that the Debtor could no longer afford to operate and would have to shut down that day.

12.    Despite the Debtor's lack of operating income, Perkins was able to secure funding to allow the Debtor to continue operating.  This pattern continued for months.

13.    Ultimately, Brash determined that the Debtor was no longer able to operate.  At about the same time, the Debtor believed it had reached an agreement to purchase the property from which it was operating which would allow it to pay its creditors.  However, the lender that was going to finance the purchase of the property did not want to be involved in a transaction in Bankruptcy Court.  Accordingly, the Debtor filed a motion to dismiss the First Case.  Brash filed a joinder.  On August 29, 2022, the Court dismissed the First Case based on Brash's joinder without objection from the U.S. Trustee.

The Second Bankruptcy Case

14.    On February 8, 2023 (the "**Petition Date**"), the Debtor filed its second bankruptcy case (the "**Second Case**").

15.    On February 9, 2023, the Debtor filed an Affidavit indicating that "Other than the 2020 Tax Returns filed with the petition, there is no other balance sheet, statement of operations or cash-flow statements, that have been prepared at this time on behalf of Tavern on LaGrange Corp." Dkt No. 6.  Given Brash was operating the Debtor and the Debtor was obligated to (and did) file monthly operating reports, the Debtor should have additional financial statements.[1] Similarly, the Debtor should have tax documents, whether tax returns or otherwise, for 2021 as the Affidavit was filed in February 2023.

---

[1]  Perhaps the Debtor has no financial statements because it is no longer operating.  If such is the case, it should have been explained fully.  The Debtor is seeking the protections of this Court, it should not be entitled to make less than full disclosure regarding its financial affairs.

6

16.     On February 22, 2023, the Debtor filed its Schedules and Statement of Financial Affairs (the "**SOFA**").  Dkt No. 17 (Schedules), 18 (SOFA).  The Schedules and SOFA illustrate that there are no assets to liquidate and no business to rehabilitate.

The Debtor's Schedules

17.     The Debtor's Schedules indicate that it has assets with a total value of only $853.82. The Debtor included two assets on its Schedules but did assign any value to them -- a potential litigation claim and a liquor license.[2]

18.     Although scheduling inconsequential assets, the Debtor scheduled approximately $202,131.36 of secured claims.

19.     In addition to its secured debt, the Debtor scheduled unsecured debt of $699,824.29 – comprised of $579,694.69 in priority unsecured debt and $120,129.60 in general unsecured debt. Of its total unsecured debt, the Debtor scheduled the Illinois Department of Revenue (the "**IDOR**") as being owed $361,824.39, of which $323,405.21 is scheduled as a priority obligation.

20.     In addition to scheduling IDOR as a priority creditor, the Debtor scheduled its lawyer from the First Case, Brash, and Brash's attorney from the First Case as priority debt.  No specific basis is provided to substantiate the priority aspect of those debts.

21.     On its Schedule G, the Debtor listed a "1-7-2023 – Purchase Agreement of Commercial Property subsequently assigned to Unique Property Holdings, LLC around 1-14-2023."  As will be discussed below, the Debtor no longer has rights under this contract.  The Debtor scheduled no additional executory contracts.

22.     The Debtor listed no co-debtors, although Gregory Perkins is obligated to Debtor's counsel for the fees from the First Case.

---

[2] Liquor licenses are generally not transferrable, so if the Debtor does not reorganize or is not purchased in a stock sale transaction (which would not benefit the creditors), the liquor license would have no value.

The Debtor's Statement of Financial Affairs

23.    The SOFA indicates that the Debtor made no money in 2023.  *See* SOFA at Question 1.  In the First Case, while generating some revenue, the Debtor was not able to confirm a plan or otherwise resolve its case in any manner other than dismissal.  With no income, the Debtor is in a worse position.

24.    Although the Debtor scheduled a $361,824.39 obligation to IDOR, in response to Question 3 on its SOFA, the Debtor disclosed that it has paid IDOR $222,000 within the past ninety days.  The Debtor further describes those payments as "Payments of around $20k per month for about 4 months and also $140K payment in Feb 2022 – paid on behalf of Debtor towards Tax Other debt owed IDOR."  Dkt No. 18, p. 2.  Nowhere does the Debtor disclose who made those payments or the source of funds used to make those payments.  Similarly, the Debtor scheduled no creditor as being owed an amount that approximates the amount of those payments.

25.    As indicated by the Debtor's response to question 11 on its SOFA, the Debtor was not able to afford to pay the filing fee required to initiate this case.  The SOFA indicates that the filing fee was paid by Antonio Barnes, the president of the Debtor.  Although he paid the filing fee for the Debtor, Mr. Barnes is not scheduled as a creditor.

26.    In response to Question 13 of the SOFA – Transfers not already listed on this statement – the Debtor discloses a form of real estate transaction.  The nature and form of the transaction are described, but conflict with documents provided to the U.S. Trustee.

27.    Lastly, in response to Question 28 of the SOFA, the Debtor discloses that Antonio Barnes and Keith Johnson are each 50% shareholders in the Debtor and that Barnes is the President.  However, the Illinois Secretary of State records indicate that Tiffany Perkins is the Debtor's President.  Tiffany Perkins is mentioned nowhere in the Debtor's petition, Schedules, or

8

SOFA.

The 5403 S. LaGrange Road Property (the "**Property**") Transaction

28.     In response to Question 13 on the SOFA, the Debtor indicates that it assigned a

$2.7 million contract to purchase the Property (where the Debtor formerly operated) to Unique

Properties Holdings, LLC.[3] The Debtor further indicates that it **may receive** (emphasis added)

$30,000 related to the sale.

29.     Despite what is disclosed in the SOFA, Debtor's counsel provided copies of three

documents related to the real property transaction:  (i) Commercial Real Estate Sale Contract dated

January 6, 2023, by and between Guadalupe Arce and the Debtor (the "**Sale Contract**" attached

hereto as **Exhibit A**); (ii) a Commercial Real Estate Contract dated January 7, 2023 by and between

the Debtor and Unique Property Holdings, LLC (the "**Third Party Sale Agreement**" attached

hereto as **Exhibit B**); and (iii) a Revised Assignment and Assumption Agreement dated January

20, 2023 by and between the Debtor and Unique Holdings, LLC (the "**Assignment Agreement**"

attached hereto as **Exhibit C**).[4]  The transaction as governed by the provided documents does not

approximate what was described in the SOFA.

30.     The Sale Contract provides that on March 15, 2023, the Debtor will purchase the

Property from Guadalupe Arce in a cash sale transaction for $1.75 million, of which $20,000 was

to be paid as a deposit.  The Sale Contract was executed by Tiffany Perkins on behalf of the Debtor.

Ms. Perkins' relationship to or position with the Debtor is not disclosed in the Sale Contract and

---

[3] At the Initial Debtor Interview, the U.S. Trustee was told that Unique Property Holdings, LLC and the Debtor were not related.  However, the Illinois Secretary of State indicates that Unique Properties Holdings, LLC has the same agent (George LaForte) as Tavern on Lagrange II LLC ("**Tavern II**"), whose manager is Gregory Perkins.  Although Tavern II is currently "Not in Good Standing", the address for Perkins, the manager, is the same principal address as Unique Property Holdings, LLC.
[4]  The Assignment Agreement contains the signature page from what appears to be the Original Assignment (provided to the U.S. Trustee by a party other than the Debtor).  *See* fn. 5.

not disclosed anywhere in the Petition, Schedules, or SOFA. The Earnest Money Escrow Agreement Single Deposit, attached to the Sale Contract, was signed by Unique Property Holdings, LLC as buyer and was not signed by the Debtor. Moreover, the earnest money deposit was paid by a Cashier's Check indicating that Tavern Hospitality Group is the remitter of the funds. Tavern Hospitality Group is not a party to the Sale Contract.

31.     The day after the Sale Contract was signed, the Debtor entered into the Third Party Sale Agreement. The Third Party Sale Agreement provides that the Debtor will sell the Property that it purchases from Arce to Unique Property Holdings, LLC for $2.7 million. Like the Sale Contract, the Third Party Sale Agreement is executed by Tiffany Perkins on behalf of the Debtor.

32.     On January 20, 2023, the Debtor and Unique Property Holdings, LLC entered into the Assignment Agreement. Although styled as a "revised" agreement, the Debtor has not produced the original assignment and assumption agreement.[5] And, unlike the other documents, this document was signed by Mr. Barnes on behalf of the Debtor.

33.     The Assignment Agreement provides that Unique Property Holdings, LLC will take assignment of the Debtor's rights under any sale contract with Arce (assumedly the Sale Contract). The Assignment Agreement contains no recitation of consideration to be paid to the Debtor. Nor does the Assignment Agreement require Unique Property Holdings, LLC to lease any portion of the premises to the Debtor. It is unclear how the Assignment Agreement impacts the Third Party Sale Agreement, although it would seem to supersede it. If the Assignment Agreement does supersede the Third Party Sale Agreement, the Debtor is entitled to nothing from Unique Property Holdings, LLC and has no expectation of revenue from it.

---

[5] The U.S. Trustee has been provided a copy of an Assignment and Assumption Agreement dated January 7, 2023 (the "**Original Assignment**"). The Original Assignment was not provided by the Debtor.

34.     At the 341 Meeting, Mr. Barnes further testified with regard to the Property.

The Debtor's 341 Meeting

35.     The Debtor's 341 Meeting was held on March 14, 2023.  Mr. Barnes appeared as the Debtor's representative at that meeting.

36.     At the 341 Meeting, the Mr. Barnes testified in a manner both consistent with and inconsistent with the Schedules and Statement of Financial Affairs.  Additionally, he explained the Debtor's plan for reorganization.

The Debtor's Schedules and SOFA are Incorrect in Material Ways

37.     At the 341 Meeting, Mr. Barnes testified regarding the Debtor's Schedules, SOFA, corporate ownership, business plans, and general status.

38.     During the court of the 341 Meeting, it became clear that the Debtor's Petition, Schedules, and SOFA were incorrect in material respects.  Initially, the Debtor's address on its Petition is incorrect.  Approximately a week after the Court dismissed the First Case, the Debtor shuttered its business and allowed Tavern Hospitality Group Ltd. and Tavern Hospitality Group Holdings LLC to take over the premises and continue to operate the business that the Debtor formerly operated.  It allowed Tavern Hospitality Group Ltd. and Tavern Hospitality Group Holdings LLC to take over the business for no consideration.

39.     Because it allowed third parties to operate its business, the Debtor was required to vacate the premises.  According to Mr. Barnes, the Debtor's current address is 101 Burr Ridge Parkway, Suite 206, Burr Ridge, IL (the "**Current Address**"), although that is not what is listed on the Petition.  On March 23, 2023, the Debtor filed a change of address updating its address to the Current Address.

40.     Additionally, although not disclosed on Schedule G, when it filed its Petition, the

Debtor was party to two leases.  One of the leases is with Unique for use of a portion of the Property

and the second is with Unique for property located at 17 N. Wabash, in Chicago.  According to

Mr. Barnes' testimony, the leases were signed in February 2023, but occupancy and rent

obligations did not being until April 1, 2023.  Based on the Debtor's lack of functioning business,

it is accruing administrative expenses with no ability to pay them.

Additional Information Regarding the Property

      41.    Additionally, Mr. Barnes clarified the status with regarding to the purchase of the

Property.  Mr. Barnes admitted that the Debtor has no interest in and no right to purchase the

Property.  He testified that the Debtor held an original contract to purchase the Property that was

scheduled to close in December 2022.  The Debtor was unable to close that purchase.  As a result,

the Debtor and Arce entered into the January 6, 2023, sale contract.  At approximately the same

time, the Debtor entered into a contract to resell the Property to Unique.  After the contract and the

subsequent re-sale contract were signed, it became clear that the Debtor would not be able to secure

the funding it required to close that sale.  Because the Debtor would be unable to close on the

contract, it assigned the contract to Unique.  The assignment to Unique was made for no

consideration and the Debtor received nothing of value for assigning the contract to Unique.

Barnes further testified that once the Debtor assigned the sale contract to Unique, the Debtor no

longer had the right to purchase the Property.  And, without the right to purchase the Property, the

subsequent re-sale contract became null and void and will not provide any benefit to the Debtor.

      42.    The sale of the Property was scheduled to close on March 15, 2023.  The sale did

not close on that date.  The lender was concerned about the effects that the bankruptcy would have

on the transaction – although Barnes testified that the Debtor no longer held the right to purchase

the Property.

43.    Additionally, the Sale Contract provided that if the sale did not close "by March 15, 2023, Buyer [the Debtor] shall promptly move-out of the Property on April 3, 2023 . . ." *See* Sale Contract at ¶ 33.  It is unclear what right the Debtor has to remain on or otherwise utilize the Property.

44.    After the March 15, 2023, sale did not close, the closing was rescheduled to March 30, 2023.  The March 30, 2023, sale did not close either.

45.    After the March 30, 2023, date, an attorney representing "Tavern on LaGrange" sent a letter to the seller's attorney indicating that the purchaser (not named other than as "Tavern on LaGrange") has the funds to close the sale – although it was received after the closing date. The letter further indicated that the buyer ("Tavern on LaGrange") would be able to close on April 6, 2023.  Copied on the letter was Gregory Perkins, although his role in the sale is not otherwise disclosed.  Although his role is not disclosed, Mr. Barnes testified that Mr. Perkins has no official role with the Debtor.

46.    After the status hearing on April 3, 2023, the U.S. Trustee was informed that the title company that was scheduled to close the sale of the Property now indicated that it would no longer be involved in the sale.  The U.S. Trustee was also provided with a copy of the original assignment -- the Original Assignment -- which was dated January 7, 2023.  Comparing the Original Assignment to the Assignment Agreement indicates that the signature of the seller on purports to be dated the same date on both documents -- January 7,2023, the Date of the Original Assignment.  A copy of the Original Assignment is attached hereto as **Exhibit D**.

The Subchapter V Trustee and Her Retainer

47.    On February 28, 2023, the Subchapter V filed a motion requesting that this Court approve her requested retainer. [Dkt No. 22].

48.     On March 20, 2023, the Court granted the motion and required the Debtor to pay a $5,000 retainer within seven days.  [Dkt No. 31].  As of the status hearing before the Court on April 3, 2023, the Debtor had not paid the Subchapter V trustee.

## ARGUMENT

## CAUSE EXISTS TO DISMISS OR CONVERT THIS CASE

49.     In relevant part, Section 1112(b) of the Bankruptcy Code provides that on the request of a party in interest, and after notice and a hearing, the court shall convert the case to Chapter 7 or dismiss the case, whichever is in the best interests of creditors of the estate, so long as the movant establishes "cause."  *See* 11 U.S.C. § 1112(b)(1).

50.     Section 1112(b)(4) sets forth a list of sixteen grounds that constitute "cause" for conversion or dismissal. See 11 U.S.C. § 1112(b)(4)(A)-(P).  This list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in section 1112(b)(4).  *See In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009); *In Matter of Strug-Division, LLC*, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007).

51.     "The court must convert a case to chapter 7 or dismiss the case if there is 'cause' to do so" unless the debtor can establish one of the exceptions.  *See In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018). Once cause is established, the debtor has the burden of proving the required exceptions to fend off conversion or dismissal. *Id.* To fend off conversion or dismissal, the court must find "unusual circumstances" "establishing that converting or dismissing the case is not in the best interest of creditors and the estate." 11 U.S.C. §1112(b)(2).  And, the debtor or another party must establish (A) there is a reasonably likelihood that a plan will be confirmed as provided for in sections 1121(e) and 1129(e) or within a reasonable time if those section do not apply **and** (B) "the grounds for converting or dismissing the case include an act or

omission of the debtor other than paragraph [§1112(b)] (4A) – (i) for which there exists a reasonable justification for the act or omissions; and (ii) that will be cured within a reasonable period of time fixed by the court." *Id.*

**The Debtor's Lack of Good Faith Constitutes Cause**

52.    "It is generally recognized that 'good faith' is a threshold prerequisite to securing Chapter 11 relief." *In re Madison Hotel Assocs.*, 749 F.2d 410, 426 (7th Cir. 1984).  Lack of "good faith" constitutes cause sufficient for dismissal under 11 U.S.C. §1112(b).  *Id.*

53.    In determining whether "good cause" exists for the filing, some courts consider the "totality of the circumstances." *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 750 (Bankr. N.D. Ill 2004) (citations omitted).  Other courts look to a list of factors, including: (i) whether the debtor has only one asset; (ii) whether "the debtor has an ongoing business to reorganize"; (iii) the existence of unsecured creditors; (iv) the debtor's cash flow to pay under a plan or to pay adequate protection; and (v) whether the case is a two party dispute which can be adjudicated promptly in state court. *Id.* at 751.

54.    Under any standard, the Debtor has not filed this case in good faith.  Indeed, there are inexcusable errors in the Debtor's filings.

55.    The Debtor did not include its proper address in its filing.

56.    Moreover, the Debtor omitted executory contracts from its filing – contracts which cause the estate to incur administrative expenses with no income to pay them.

57.    Further, the transactions surrounding the Property were not described in proper detail and, based on information disclosed at the 341 Meeting and otherwise, appear to be materially incorrect.  A review of the documents evidences that the Debtor no longer has any right to purchase the Property.  The documents also show that the Debtor received nothing for assigning

its right to purchase the Property.

58.     Moreover, the Debtor has no operations and minimal assets.  Without either, the
Debtor is unable to propose any feasible plan.

59.     Lastly, despite is promises to pay its creditors after the First Bankruptcy, it appears
that the Debtor caused only its attorney.  And, the source of the payment was not the non-operating
Debtor, but a third party whose connection to the First Bankruptcy is clear but whose relationship
to the Second Bankruptcy has not been disclosed.

**With No Income, the Debtor has a Substantial Loss and an Absence of a Reasonable
Likelihood of Rehabilitation**

60.     The Debtor is not operating but is accruing administrative expenses while sitting in
this Second Bankruptcy.

61.     The Debtor's attorney and the Subchapter V trustee continue to accrue fees that the
Debtor is unable to pay.  Currently, the estate is administratively insolvent.

62.     Moreover, the Debtor purports to be working toward the purchase of the Property.
Initially, it has no right to purchase the Property.  Secondly, to the extent counsel (that has not yet
been retained) is involved either: (i) that attorney is a volunteer or (ii) the estate is incurring
additional administrative expenses.

63.     Not only is the Debtor generating a loss to the estate, but the Debtor also has no
assets and is generating no income.  Without assets or income, the Debtor is not able to confirm
any plan of reorganization.  "Dismissal is 'proper if the court determines that it is unreasonable to
expect that a plan can be confirmed in the Chapter 11 case.'"  *In re Medina*, No. 14-27755, 2014
WL 5842988, at *4 (Bankr. N.D. Ill. Nov. 7, 2014) (*quoting In re Woodbrook Assoc.*, 19 F.3d 312,
316 (7th Cir. 1994).

**The Debtor Breached Its Duty to Creditors**

64.    The Debtor breached its duty to its creditors by failing to maximize the value of its assets.  Indeed, it allowed related third parties to usurp its business and granted those parties the right to use its liquor license in operations.

65.    Within a week of the First Case being dismissed, the Debtor vacated the Property. It vacated the Property to allow two related entities to operate the business that the Debtor's previous business.

66.    The Debtor received no consideration for the business or the right to the business that it abandoned or for the third parties' use of the Debtor's liquor license.[6]

**The Debtor Failed to Obey an Order of Court**

67.    On March 20, 2023, the Court entered an order requiring the Debtor to pay the Subchapter V trustee a $5,000 retainer within seven days.  [Dkt No. 31].  As of the status hearing before the Court on April 3, 2023, the Debtor had not paid the Subchapter V trustee.

68.    Because the Debtor has failed to comply with an order of court, this case should be dismissed.  11 U.S.C. §1112(b)(4)(E),

**DISMISSAL IS IN THE BEST INTEREST
OF CREDITORS AND THE ESTATE**

69.    The question of whether conversion or dismissal is in the best interests of creditors and the estate is a question committed to the discretion of the bankruptcy court. *In re Aurora Memory Care, LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018) ("*Aurora Memory*"). In answering that question, courts often weigh which course of action will lead to the largest number of creditors receiving the most amount of money in the shortest period of time. *Aurora Memory*, 589 B.R. at

---

[6] The Court also raised the issue of whether the Debtor was able, legally, to "lend out" its liquor license to a third party.

643. Courts also compare how creditors would fare trying to collect from the debtor in bankruptcy court as opposed to outside of bankruptcy. *Id*. In comparing those two scenarios, a key question is the availability of estate assets for a bankruptcy trustee to liquidate and use to pay creditors the money the debtor owes them. *Id*.

70.    In this case, there are no assets to distribute to creditors.  And, whatever business plan the Debtor may have, it is untested and unproven.  Further, the Debtor appears to be relying on a gift of the use of the premises and "seed money" to allow this case time to develop. Accordingly, dismissal is appropriate.

### SHORTEN NOTICE

71.    The U.S. Trustee respectfully requests that notice be shortened to that given because this case has been pending with no significant activity and the Debtor has no income and minimal assets.  Additionally, the case was not filed in good faith and no reason exists for it to continue to pend for the required twenty-one-day notice period.

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an order: (i) shortening notice of the hearing on this motion to the notice given; (ii) dismissing this case, and (iii) granting such other relief as is equitable and just.


RESPECTFULLY SUBMITTED:

PATRICK S. LAYNG
UNITED STATES TRUSTEE


DATED: <u>April 6, 2023</u>                BY:        */s/ Jeffrey L. Gansberg*
Jeffrey L. Gansberg, Attorney
OFFICE OF THE U.S. TRUSTEE
219 South Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 886-3327